UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAWNA McNAUGHTON,

                              Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

<u>DECISION AND ORDER</u>

18-CV-1004L

**PRELIMINARY STATEMENT**

Plaintiff Shawna McNaughton ("McNaughton") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. # 1).

On December 30, 2014, McNaughton protectively filed an application for a period of disability and DIB and for SSI, alleging disability beginning on August 22, 2011. (Tr. 68, 69, 70, 82).[1] On April 17, 2015, the Social Security Administration denied McNaughton's applications, finding that she was not disabled. (Tr. 94-101). McNaughton requested and was granted a hearing before an administrative law judge. (Tr. 105-18). Administrative Law Judge Paul Greenberg (the "ALJ") conducted the hearing on April 18, 2017, at which McNaughton and vocational expert Dian L. Haller (the "VE") testified. (Tr. 33-67). In a decision dated June 16, 2017, the ALJ found that McNaughton was not disabled and was not entitled to benefits. (Tr. 13-28). On July 12, 2018,

---

[1] References to page numbers in the Administrative Transcript (Dkt. # 7) utilize the internal Bates-stamped pagination assigned by the parties.

the Appeals Council denied McNaughton's request for a review of the ALJ's decision, making the Commissioner's decision final. (Tr. 1-6). McNaughton then commenced this action on September 14, 2018, seeking review of the Commissioner's decision. (Dkt. # 1).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. ## 10; 13). For the reasons set forth below, McNaughton's motion (Dkt. # 10) is denied, and the Commissioner's cross motion (Dkt. # 13), is granted. McNaughton's Complaint (Dkt. # 1), therefore, is dismissed with prejudice.

## DISCUSSION

### I. Relevant Standards

Determination of whether a claimant is disabled within the meaning of the Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *see also* 20 C.F.R. §§ 404.1520, 416.920. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

### II. The ALJ's Decision

In this case, the ALJ applied the sequential analysis. At step one, the ALJ found that McNaughton had not engaged in substantial gainful activity since August 22, 2011 – the alleged onset date. (Tr. 15). At step two, the ALJ found that McNaughton had the following severe impairments: degenerative disc disease and bipolar disorder, alternatively referred to as depressive disorder or as borderline personality disorder. (*Id.*). At step three, the ALJ found that such

impairments, alone or in combination, did not meet or medical equal a listed impairment in Appendix 1 to Subpart P of Part 404 of the relevant regulations. (Tr. 16).

Next, the ALJ determined that McNaughton retained the RFC to perform light work, except with the following additional limitations: occasional kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing ladders, ropes, or scaffolds; the ability to sit for five minutes after standing for 25 minutes, or stand for five minutes after sitting for 25 minutes, but she could continue to work in either position; frequent reaching with the bilateral upper extremities; and frequent interaction with co-workers as part of a job, and occasional in-person interaction with the public, but was not limited in interactions with the public via the telephone. (Tr. 17).

At step four, based on the VE's testimony, the ALJ found that McNaughton had past work experience as a telemarketer (DOT # 299.357-014), which was sedentary work, and as a certified nurse assistant ("CNA") (DOT # 355.674-014), which was medium work. (Tr. 22). The ALJ adopted the VE's testimony that McNaughton was capable of performing her past relevant work as a telemarketer. (*Id.*).

While such a finding rendered McNaughton not disabled under the Act, the ALJ proceeded to make the alternative finding, at step five, that McNaughton could perform other work that existed in significant numbers in the national economy based on her age, education, work experience, and RFC. (*Id.*). Specifically, based on the VE's testimony, the ALJ found that McNaughton could also perform the jobs of inspector of plastic products (DOT # 599.687-074), assembler of electronic parts (DOT # 729.684-054), and assembler of plastic products (DOT # 712.687-010), all of which were light, unskilled work with a specific vocational preparation ("SVP") level of 2. (Tr. 23). Therefore, based on the ALJ's findings, he found that McNaughton was not disabled under the Act. (Tr. 24).

### III. McNaughton's Contentions

McNaughton contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Dkt. # 10). McNaughton principally takes issue with the ALJ's consideration of certain medical evidence related to her physical impairments.[2] Specifically, McNaughton contends that the ALJ failed: (1) to evaluate the opinion from treating orthopedic surgeon Cameron Huckell ("Huckell"), M.D.; (2) to properly evaluate the opinion of treating pain management specialist Bernard Beaupin ("Beaupin"), M.D.; (3) to properly evaluate the opinion of treating pain management specialist Romanth Waghmarae ("Waghmarae"), M.D.; and (4) to address the opinion of independent medical examiner Frank Luzi ("Luzi"), M.D. (Dkt. # 10-1 at 20-30). McNaughton also maintains that the ALJ's RFC determination is not supported by substantial evidence because he failed to account for any limitations related to McNaughton's restricted ability to bend and twist her neck, as opined by Luzi. (*Id.* at 30-31).

After considering these arguments and reviewing the record evidence, I believe the evidence supports the ALJ's findings concerning the nature and extent of McNaughton's limitations, and that his finding that McNaughton is not disabled is supported by substantial evidence and was not the product of legal error.

### IV. Analysis

#### 1. Dr. Huckell's Opinion

McNaughton first argues that the ALJ did not weigh Huckell's permanency evaluation of McNaughton in accordance with the treating physician rule, which Huckell completed on

---

[2] McNaughton only challenges that portion of the ALJ's decision dealing with her physical impairments, not her mental impairments. (Dkt. # 10-1 at 14 n.2 ("Ms. McNaughton does not raise any issues related to the ALJ's evaluation of her mental impairments.")). Therefore, this decision only discusses medical evidence related to McNaughton's physical impairments.

4

September 15, 2015, for purposes of McNaughton's New York State Workers' Compensation claim. (Dkt. # 10-1 at 20-25). McNaughton also contends that the ALJ did not evaluate Huckell's opinions throughout his treatment notes regarding McNaughton's percentage and level of disability. (*Id.* at 25-26). I disagree with both of McNaughton's arguments.

On August 14, 2013, Huckell performed a C3-6 spinal fusion on McNaughton. (Tr. 437-38). On September 15, 2015, McNaughton presented to Huckell for a permanency evaluation, at which time Huckell noted that McNaughton had "reached maximum medical improvement." (Tr. 570). Huckell also noted that McNaughton had previously completed a functional capacity evaluation, performed by physical therapist Mark Howard ("Howard"). (Tr. at 570, 572-73 (referencing Tr. 559-69)). On physical evaluation, Huckell indicated that McNaughton had limited range of motion in her cervical spine, but had functional range of motion in her shoulders, elbows, wrists, hips, knees, and ankles, and had full strength in her upper and lower extremities. (Tr. 572).

Huckell ultimately opined that McNaughton had a "permanent partial disability to a marked degree (75%)." (Tr. 573). As far as work restrictions, Huckell briefly summarized some of the findings from Howard's August 24, 2015, functional capacity evaluation. (*Id.*). "Per [the factional capacity evaluation] dated [August 24, 2015]," Huckell noted that McNaughton: was able to lift ten pounds from the floor to chest height occasionally with both hands, as she completed the first attempt, but discontinued the task due to pain; was unable to carry short distances with both hands due to pain; had limited bending, rotation and twisting of the lumbar spine; could sit for sixty minutes and stand for up to twenty minutes without a break; could walk regularly with short walks and occasionally with long walks; could work up to eight hours per week; and was able to meet the sedentary physical demand level work requirements. (*Id.*). Huckell then added, "[a]gain,

please review [Howard's August 24, 2015, functional capacity evaluation] for complete details."
(*Id.*).

The ALJ did not discuss these restrictions as if they were Huckell's own opinions. Rather, the ALJ discussed and weighed Howard's functional capacity evaluation separately, outside the context of the treating physician rule. (Tr. 21). I cannot say that this was error, as it is not clear by Huckell's reference to and brief, selective summary of Howard's findings whether he meant to adopt and incorporate the entirety of Howard's findings into his permanency evaluation, which would have brought Howard's findings within the ambit of the treating physician rule.

As the Commissioner points out, there are inconsistencies between the work restrictions mentioned by Huckell and those found by Howard. For instance, Huckell opined that McNaughton *could* in fact perform the physical demands of sedentary work, whereas Howard opined that McNaughton could only perform less than sedentary work. (*Compare* Tr. 560, *with* Tr. 573). Moreover, Huckell's opinion that McNaughton could work only eight hours per week appears nowhere in Howard's opinion. (*Id.*). Given these inconsistencies and uncertainty over whether Huckell meant to adopt Howard's findings, it is my view that the ALJ did not violate the treating physician rule by failing to discuss the functional capacity evaluation as if it was Huckell's opinion.

To the extent that the work restrictions appearing in Huckell's permanency evaluation should have been analyzed pursuant to the treating physician rule, I find that any such error was harmless in light of the ALJ's RFC determination and his finding that McNaughton could perform her past relevant work as a telemarketer. *See Frazer v. Comm'r of Soc. Sec.*, 2018 WL 1033286, *6 (N.D.N.Y. 2018) ("Failure to consider or weigh an opinion may be considered harmless error where consideration of that opinion would not have changed the outcome.").

First, as the ALJ pointed out, the position of telemarketer is a sedentary job, and Huckell opined that McNaughton "was able to meet the sedentary physical demand level work requirements," which would accommodate the lifting and walking restrictions noted by Huckell. (Tr. 22, 573). Second, the position of telemarketer would also accommodate Huckell's opinion that McNaughton was limited in her ability to bend, rotate and twist her lumbar spine. *See, e.g.*, *Hanlon v. Comm'r of Soc. Sec.*, 2010 WL 5285311, *6 (N.D.N.Y. 2010) (no error in relying on testimony of vocational expert that claimant could perform the job of telemarketer even when claimant was unable to engage in repetitive bending or twisting of the neck); *Colwell v. Comm'r of Soc. Sec.*, 2010 WL 5395006, *5 (E.D. Mich.) (affirming ALJ's finding that claimant, who was limited to, among other things, occasional bending, twisting, and turning at the waist or the neck, could perform the job of telemarketer), *report and recommendation adopted by*, 2010 WL 5421435 (E.D. Mich. 2010). In addition, the ALJ included a sit/stand option for McNaughton that accounted for Huckell's opinion related to McNaughton's sit/stand restrictions. (Tr. 17, 573).

Finally, Huckell's conclusory opinion that McNaughton could work only eight hours per week is a statement on an issue reserved for the Commissioner, and therefore the ALJ did not have to afford this opinion controlling weight. *See, e.g.*, *Michael C. v. Comm'r of Soc. Sec.*, 2018 WL 4689092, *2 (N.D.N.Y. 2018) ("in any event, the statement that [claimant] could work only three hours per day is a statement on an issue reserved to the Commissioner").

Moreover, the ALJ analyzed Howard's functional capacity evaluation and properly assigned the opinion "little weight." *See, e.g.*, *Michael C.*, 2018 WL 4689092 at *2 (ALJ properly evaluated functional capacity evaluation completed by physical therapist, which was adopted by claimant's treating orthopedist; "the ALJ's RFC is consistent with [treating orthopedist's] opinion that [claimant] can do sedentary work[;] [m]ore importantly, the ALJ's decision explains why he

7

gave only some weight to the FCE that [treating orthopedist] adopted[;] . . . [t]he failure to explicitly address [treating orthopedist's] letter is therefore harmless").

The ALJ accurately noted that Howard was a physical therapist and, therefore, not an acceptable medical source. *See Acevedo v. Colvin*, 20 F. Supp. 3d 377, 389 (W.D.N.Y. 2014). In addition, the ALJ pointed to Howard's note that McNaughton, among other things, did not give maximal effort during the examination, and the results were "most likely representative of [McNaughton's] minimal, not maximal capabilities." (Tr. 21 (citing 561)). These were proper reasons to discount Howard's opinion. *See, e.g.*, *Harrison v. Comm'r of Soc. Sec.*, 2018 WL 3153399, *3 (W.D.N.Y. 2018) (ALJ properly relied on physical therapist's opinion that claimant was "self-limited during the evaluation, and found that this called into question the reliability and accuracy of the plaintiff's reports of pain and disability"); *Millard v. Comm'r of Soc. Sec.*, 2014 WL 6485807, *4 (D. Vt. 2014) (doctor "inject[ed] doubt into her findings" that claimant met the criteria for a listing where the doctor also stated that her "evaluation of [claimant] might not accurately reflect [claimant's] abilities due to her varied levels of effort").

Furthermore, the ALJ did not err in failing to mention Huckell's conclusory characterization of the percentage and level of McNaughton's disability, which Huckell variously described at different times as "temporarily partially disabled to a moderate to marked degree" (Tr. 384), "temporarily and totally disabled" (Tr. 393), "moderate to marked partial disability" (Tr. 414), and "permanent partial disability to a marked degree (75%)" (Tr. 573). Each of those assessments was rendered in the Workers' Compensation context, and therefore is neither entitled to controlling weight nor binding under the Act. *See DiCarlo v. Colvin*, 2016 WL 4734633, *14-15 (E.D.N.Y. 2016) ("courts have consistently recognized that the disability standards under the Social Security Act and New York Workers' Compensation Law are markedly distinct; therefore

8

an opinion of disability rendered for purposes of workers' compensation is not binding under the Social Security Act") (quotations omitted); *King v. Colvin*, 2016 WL 1165309, *6 (W.D.N.Y. 2016) ("Workers' compensation opinions are directed to the worker's prior employment and measure the ability to perform that employment rather than using the definition in the Social Security Act.") (quotations omitted); *DeJesus v. Barnhart*, 2007 WL 528895, *14 (W.D.N.Y. 2007) ("an ALJ need not give controlling weight to a treating physician's opinions concerning a claimant's 'disability' in connection with a Worker's Compensation proceeding").

Moreover, and significantly, those conclusory assessments addressed an issue reserved solely for the Commissioner and the ALJ was not required to discuss them pursuant to the treating physician rule. *See, e.g.*, *Smith v. Colvin*, 2016 WL 5395841, *19 (E.D.N.Y. 2016) ("[doctor's] statements that the [p]laintiff was 'disabled' for Workers' Compensation purposes are not medical opinions that would come within the purview of the Treating Physician Rule[;] [t]hey are, instead, conclusory statements regarding the ultimate issue in the case"); *see also Sink v. Colvin*, 2015 WL 3604655, *17 (W.D.N.Y. 2015) ("In fact, a conclusory statement concerning disability, made by a treating physician, does not constitute a 'medical opinion' in any event."); *Clark-Gyllenboga v. Colvin*, 2015 WL 2151823, *7 (W.D.N.Y. 2015) ("Given that the determination of whether an individual is disabled is unequivocally a matter reserved for the Commissioner, the ALJ was not required to address [doctor's] opinion that [claimant] had a '100% temporary impairment' and was disabled. . . . Moreover, [doctor's] opinion of disability was made in the context of a workers' compensation claim, which uses different standard[s] than the Social Security Act."); 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "statement[s] by a medical source that you are 'disabled' or 'unable to work'" are not "medical opinions" as defined by the regulations, but are instead "opinions on issues reserved to the Commissioner").

For these reasons, remand is not warranted for the ALJ to evaluate Huckell's opinions.

## 2. Dr. Beaupin's Opinion

McNaughton also contends that the ALJ erred in assigning "no weight," without sufficient reasons, to four of Beaupin's medical assessments of McNaughton, all of which were completed for purposes of McNaughton's workers' compensation claim. (Dkt. # 10-1 at 26-28 (citing Tr. 288, 302, 312, 316)).

The first record cited by McNaughton relates to Beaupin's February 2013 examination of McNaughton, which the ALJ summarized in detail. (Tr. 19 (citing Tr. 651-53)[3]). At that time, Beaupin noted that McNaughton's main complaint was neck and mid-back pain. (Tr. 286). Beaupin conducted a physical examination of McNaughton, which revealed limited range of motion in her cervical spine and her right shoulder. (Tr. 652). McNaughton also exhibited full motor strength in her upper limbs and full muscle strength reflexes. (*Id.*). McNaughton reported to Beaupin that she had not had any "particular treatment to date other than pain medication," and stated that the "pain [was] tolerable" with medication. (*Id.*). Beaupin recommended that McNaughton obtain a cervical spine MRI and an MRI of her right shoulder. (*Id.*). Beaupin opined that McNaughton's disability was "[t]emporary partial 50%." (Tr. 653). He further noted that "[r]estrictions are no lifting greater than 10 pounds[,] [l]imited use of the right arm[,] [a]void reaching, pushing, pulling and carrying[,] [and] [n]o overhead activity." (*Id.*).

Beaupin also examined McNaughton in June and July 2013, prior to McNaughton's corrective spinal surgery in August 2013. At the June appointment, Beaupin noted that McNaughton had "been recommended for surgery by [Huckell] and [would] like to proceed with it." (Tr. 302). Beaupin opined that McNaughton's disability was "[t]emporary partial 75%," and

---

[3] These are the same examination notes as those appearing at Tr. 286-88.

10

noted the same functional restrictions as the February 2013 appointment, except that he changed the lifting restriction to "no lifting." (*Id.*).

In July 2013, McNaughton told Beaupin that pain medication decreased her pain, but physical examination results remained consistent as prior appointments. (Tr. 310-11). Beaupin's disability and functional limitation opinions remained unchanged from the June appointment. (Tr. 312). Later that month, Beaupin noted that McNaughton's pain medication remained effective and her physical examination results remained the same. (Tr. 314-15). Beaupin's disability and functional limitation opinions also remained the same from the prior two appointments. (Tr. 316).

As mentioned above, the ALJ did not err in failing to discuss Beaupin's conclusory characterization of McNaughton's percentage of disability, rendered in the context of McNaughton's Workers' Compensation claim. *See, e.g.*, *Smith*, 2016 WL 5395841 at *19; *see also Sink*, 2015 WL 3604655 at *17; *Clark-Gyllenboga*, 2015 WL 2151823 at *7; 20 C.F.R. §§ 404.1527(d), 416.927(d).

Moreover, the ALJ properly observed that Beaupin's February 2013 opinion regarding McNaughton's functional limitations was "limited to a particular time and [was] only analyzing a snapshot of [McNaughton's] functioning." (Tr. 21). Beaupin consistently opined that McNaughton's disability was temporary. In addition, Beaupin's evaluation records cited by McNaughton occurred prior to McNaughton's August 2013 spinal surgery, after which McNaughton herself reported that her symptoms improved. (*See, e.g.*, Tr. 332, 346). This is, in part, why the ALJ afforded "significant weight" to the opinion of consultative examiner Donna Miller, who, the ALJ explicitly pointed out, examined McNaughton "in March 2015, substantially after [McNaughton's] corrective spinal surgery." (Tr. 20). Thus, the ALJ did not err in affording less weight to opinions rendered prior to her corrective surgery, particularly where the record

11

shows that McNaughton experienced an improvement in her symptoms post-surgery. *See, e.g.*, *Urbanak v. Berryhill*, 2018 WL 3750513, *24 (S.D.N.Y.) ("Plaintiff's lumbar decompression and fusion surgery was intended to improve plaintiff's degenerative disc disease, and a review of the overall record indicates that plaintiff's condition did in fact improve post-surgery. Thus, is was entirely reasonable to give more weight to opinions rendered after this corrective surgery was performed."), *report and recommendation adopted by*, 2018 WL 3745667 (S.D.N.Y. 2018).

Therefore, although the ALJ might not have explicitly considered the factors associated with the treating physician rule, the Court is satisfied that the ALJ considered the opinion and provided a sufficient rationale in discounting the opinion. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (where "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").

### 3. Waghmarae's Opinion

McNaughton argues that the ALJ erred by "failing to even mention" Waghmarae's opinion that McNaughton had a "marked impairment." (Dkt. # 10-1 at 28-29). McNaughton notes that Waghmarae, a treating pain management specialist, treated McNaughton about seventeen times between 2014 and 2016 and "consistently opined that [she] had a marked (75 percent) impairment." (*Id.* at 28). The Commissioner responds that the ALJ did not need to consider to Waghmarae's opinion that McNaughton had a marked impairment, which was provided in the workers' compensation context and which failed to specify work-related functional limitations. (Dkt. # 13-1 at 25). I agree with the Commissioner.

As support for her argument, McNaughton points to fifteen separate instances where Waghmarae, when asked to indicate "[w]hat is the percentage (0-100%) of temporary impairment," indicated that McNaughton had a marked – 75 percent – impairment. (Dkt. # 10-1 at 28 (citing Tr. 477, 482, 486, 498, 506, 513, 521, 529, 535, 540, 548, 557, 583, 591, 606)). Upon review, each of those notes details appointments between McNaughton and Waghmarae for McNaughton's workers' compensation claim, at the end of which Waghmarae checked a box indicating McNaughton's percentage of "temporary impairment."

As with the opinions of Huckell and Beaupin, the ALJ was not required to address Waghmarae's conclusory opinion that McNaughton had a marked (75 percent) impairment. Not only was that opinion issued in the context of McNaughton's workers' compensation claim, but Waghmarae's opinion also dealt with an issue reserved solely for the Commissioner. *See, e.g.*, *Smith*, 2016 WL 5395841 at *19; *see also Sink*, 2015 WL 3604655 at *17; *Clark-Gyllenboga*, 2015 WL 2151823 at *7; 20 C.F.R. §§ 404.1527(d), 416.927(d).

Furthermore, and significantly, aside from these conclusory statements, the records cited by McNaughton do not otherwise contain medical opinions the ALJ was required to weigh. The regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). "Medical opinions do not include the results of objective tests, such as any clinical or diagnostic techniques," and they "differ from mere treatment notes, which merely list the symptoms detailed by the [p]laintiff and/or tests performed by the doctor." *Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 766 (S.D.N.Y. 2018) (citations and quotations

omitted). "They instead must reflect a judgment with regard to the nature and severity of plaintiff's limitations beyond a mere diagnosis and description of the symptoms." *Id.* (quotations omitted); *see*, *e.g.*, *Mushtare v. Colvin*, 2015 WL 3901981, *5 (N.D.N.Y. 2015) ("the treatment notes of [plaintiff's doctors] contain records of symptoms and diagnoses but are devoid of judgments regarding what [p]laintiff can or cannot do relative to his diagnoses and symptoms[;] [a]ccordingly, these treatment notes do not constitute medical opinions warranting the ALJ's consideration in support of her disability determination").

Here, the records cited by McNaughton are more accurately described as treatment notes than medical opinions. In each of the records, Waghmarae summarized McNaughton's reason for the appointment, her past medical/surgical history, provided an overview of symptoms and medications, described physical findings upon examination, and stated a treatment plan. Significantly, though, Waghmarae does not provide a judgment or description of what McNaughton could do despite her impairments. Therefore, the records do not qualify as medical opinions, and the ALJ did not err in failing to discuss Waghmarae's notes cited by McNaughton. *See*, *e.g.*, *Bailey v. Berryhill*, 2017 WL 1102671, *2-3 (S.D.N.Y. 2017) (concluding that medical reports documenting plaintiff's medical history, the results of physical and neurological examinations, treatment and treatment plans, diagnoses, without assessing the functional limitations associated with plaintiff's impairments, did not constitute medical opinions within the meaning of 20 C.F.R. §§ 404.1527(a)(1) and 416.927(a)(1)). Remand is thus not warranted on this basis.

### 4. Luzi's Opinion

McNaughton also argues that the ALJ erred by failing to discuss Luzi's independent orthopedic medical examinations, which Luzi conducted on April 11, 2014 (Tr. 330-334), and

September 11, 2014 (Tr. 345-48), in connection with McNaughton's Workers' Compensation claim.

Upon physical examination on April 11, 2014, Luzi noted that McNaughton was in "no acute distress," and that her neck incision from her August 2013 spinal surgery was "well-healed." (Tr. 332). While McNaughton's neck pain was "better" and some of her symptoms had improved post-surgery, she still had neck pain "with some numbness and tingling into her right fifth finger and forearm region." (*Id.*). Her neck range of motion was fifty percent of normal with decreased flexion and right rotation/tilt, and she experienced pain with head compression, which slightly improved with distraction. (*Id.*). McNaughton's shoulders had forward flexion/abduction to 160 degrees. (*Id.*). She had full motor strength and normal gait. (*Id.*).

Luzi opined that McNaughton had "[m]oderate, partial" disability, and that her prognosis was fair. (Tr. 333). Luzi also opined that McNaughton "could return to work with restrictions," including that she should "avoid repetitive turning and twisting of her head and neck," she should not "perform repetitive overhead activities with her upper extremities," and that she should not "lift greater than 20 pounds with the upper extremities." (*Id.*). In Luzi's view, given these restrictions, it would be unlikely that McNaughton could return to work as a CNA, but felt that "less strenuous work," such as in the human resources field, "would be better for her condition." (*Id.*).

In September 2014, Luzi noted that McNaughton was able to drive and drove to the examination, as she did for her April 2014 examination. (Tr. 346). McNaughton continued to feel better than she did prior to her surgery, but still had numbness and tingling in her right fifth finger. (*Id.*). On physical examination, McNaughton presented in "no acute distress" and her gait was within normal limits. (*Id.*). While her neck range of motion was fifty percent of normal, her

15

shoulders had normal range of motion with a negative impingement. (*Id.*). She also had full motor strength, but still had decreased sensation in the right fifth finger and forearm. (*Id.*). Luzi again opined that McNaughton had "[m]oderate, partial" disability, and that she could "return to work" with the same restrictions noted in the April 2014 examination. (Tr. 347).

McNaughton is correct that the ALJ did not specifically discuss Luzi's independent medical examinations in the disability determination. The ALJ did, however, note an independent medical examination completed by Daniel Carr ("Carr"), M.D., on January 16, 2014, which Luzi referenced in his April 2014 examination. (Tr. 19, 326-29). Luzi's physical examination findings closely resembled Carr's findings, which the ALJ referenced, showing that McNaughton had normal gait, a well-healed incision on her neck from surgery, reduced cervical spine range of motion, functional range of motion in her upper extremities, intact strength, and overall adequate sensation. (Tr. 19). Moreover, the ALJ consistently cited records from the exhibit in which Luzi's examination findings appear, suggesting that even if the ALJ did not specifically discuss the records, he was aware of them. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation omitted) ("[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered").

To the extent that Luzi's examinations contained opinion evidence related to McNaughton's functional abilities, I find that any error the ALJ committed in failing to discuss this evidence was at most harmless. *See Frazer*, 2018 WL 1033286 at *6. Luzi was not a treating physician and therefore his opinion was not entitled to controlling weight, and Luzi's opinion was offered in the context of McNaughton's workers' compensation claim, which, as mentioned above, is based on different standards than insurance benefits under the Act. *See, e.g.*, *Knight v. Astrue*, 32 F. Supp. 3d 210, 226 (N.D.N.Y. 2012) (finding harmless error where ALJ erroneously gave

"no weight" to opinion of independent medical examiner completed for purposes of claimant's workers' compensation claim; "[f]irst, [doctor] was not a treating physician and his opinion was not entitled to any special weight[;] [s]econd, [doctor's] opinion was rendered in the workers' compensation context, which applies different standards relative to disability determinations than those applied by the Commissioner").

Moreover, the specific functional limitations noted in Luzi's examinations would not disturb the ALJ's findings. Even though the ALJ's RFC limited McNaughton to light work, the ALJ also found that McNaughton could perform her past relevant work as a telemarketer, which is classified as sedentary work. (Tr. 22). That job requires only "occasional" reaching, which accounts for Luzi's opinion that McNaughton should not perform "repetitive" overhead activities (DICOT # 299.357-014, 1991 WL 672624 (2016)), and would accommodate any restrictions in McNaughton's ability to repetitively turn and twist her head and neck. *See, e.g.*, *Hanlon*, 2010 WL 5285311 at *6; *Colwell*, 2010 WL 5395006 at *5.

Therefore, any error the ALJ committed by failing to specifically mention Luzi's opinions was harmless and not a basis for remand.

For these reasons, I also disagree with McNaughton that the ALJ's RFC determination was not supported by substantial evidence because he failed to incorporate the neck limitations opined by Luzi. (Dkt. # 10-1 at 30-31). Any such error was harmless, as mentioned above, because those limitations would not have prevented McNaughton from performing her past relevant work as a telemarketer. Therefore, remand is also not warranted on this basis.

## CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not based on legal error. McNaughton's motion for judgment on the pleadings (Dkt. # 10) is **DENIED**, the Commissioner's cross motion for judgment on the pleadings (Dkt. # 13) is **GRANTED**, and the Commissioner's decision that McNaughton is not disabled is affirmed in its entirety. McNaughton's Complaint (Dkt. # 1) is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 14, 2020.